## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Stephen D. Raber )<br>2119 S Street, NW )<br>Washington, DC 20008, )<br>           )<br>and )<br>           )<br>           ) | Civil Action No. 19-cv-3179 |

Stephen D. Raber         )
2119 S Street, NW       )
Washington, DC 20008, )
                 )
and                )
                 )    Civil Action No. 19-cv-3179
Blair M. Raber           )
2119 S Street, NW       )
Washington, DC 20008, )
                 )
        Plaintiffs  )
                 )
     v.             )
                 )
Black Hawk Contracting LLC )
9808 Nina Lane         )
Midland, VA 22728,     )
                 )
        Defendant. )
_____)

## <u>COMPLAINT</u>

1.      Plaintiffs bring this action because Defendant caused significant flooding and water damage to their home while repointing the brick walls of the condominium building next door.  Without Plaintiffs' knowledge or consent, Defendant knowingly and intentionally dumped sand, mortar, and other debris into the main drain on Plaintiffs' property.  This debris clogged the drain, and that clogged drain resulted in a major flood in Plaintiffs' home.

2.      Because of this flood and the Defendant's tortious actions, Plaintiffs incurred significant expenses.  Ceilings and walls had to be replaced.  Electrical wiring and light fixtures had to be replaced.  Rugs and furniture had to be cleaned, refinished, or replaced.  Meanwhile, commercial-grade drying fans operated around the clock for several days in Plaintiffs' home to prevent mold infiltration.  Large portions of their home were unusable for several weeks.

3.      Defendant has admitted fault for causing these damages.  But Defendant now refuses to pay for the damages it caused, even going so far as to deny reimbursement for documented out-of-pocket costs.

## THE PARTIES

4.      Plaintiff, Stephen D. Raber ("Steve"), is an individual who resides in the District of Columbia.  Steve owns and lives in the home at 2119 S Street, NW ("2119 Property") with his wife, Blair M. Raber.

5.      Plaintiff, Blair M. Raber ("Blair"), is an individual who resides in the District of Columbia.  Blair owns and lives in the 2119 Property with her husband, Steve.

6.      Defendant, Black Hawk Contracting LLC ("Black Hawk"), is a limited liability company incorporated in Virginia and has its principal place of business in Virginia.  Black Hawk is a contractor that performs building facade maintenance and repairs, including masonry and concrete repairs.  Black Hawk is a Class A Contractor licensed in the District of Columbia.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, given the diversity of citizenship between Plaintiffs and Defendant and the amount in controversy.  Plaintiffs are citizens of the District of Columbia.  Defendant is a citizen of Virginia.  The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.      This Court has personal jurisdiction over Black Hawk because this action arises from work and services performed by Black Hawk and its agents in the District of Columbia.  D.C. Code § 13–423(a).

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because all of the events giving rise to the claims occurred in the District of Columbia, and because the property that is the subject of the action is situated in the District of Columbia.

## ALLEGATIONS OF FACT

10.     In April 2019, Black Hawk began to perform work on behalf of the condominium next door to the 2119 Property.  The condominium is located at 2115 and 2117 S Street, NW. Black Hawk was engaged by the condominium to repoint and repair brick walls that had fallen into disrepair.

11.     In the spirit of being good neighbors, Plaintiffs granted Black Hawk and its agents permission to do some of the work from the roof of the 2119 Property because it allowed easier access to portions of the walls of the condominium.  Plaintiffs placed two conditions on this access.  First, they requested that Black Hawk take care not to damage the roof of the 2119 Property.  Second, they asked Black Hawk to clean up the work site at the end of each day. Black Hawk agreed to these conditions.

12.     Unbeknownst to Plaintiffs, and without their permission, Black Hawk and its agents routinely "cleaned up" the work site by washing sand, mortar, and other debris into the only drain on the 2119 Property that services the gutters from the roof.  Black Hawk and its agents dumped these materials into the drain on the 2119 Property knowingly and intentionally. In effect, Black Hawk and its agents treated the drain on the 2119 Property as their personal trash can, in complete disregard of Plaintiffs' rights and express instructions.

13.     The immediate and inevitable consequence of these actions was that the drain became clogged, leaving the 2119 Property vulnerable to a flood.  Plaintiffs had no knowledge

that Black Hawk had dumped these waste materials into the drain.  Nor did they have any knowledge that these materials had clogged the drain.

14.     In addition to being a violation of its reasonable duty of care, Black Hawk's disposal of these construction materials was in clear violation of the D.C. construction codes.

15.     The District has adopted the "most recent edition of the codes published by the International Code Council . . . as amended by the Construction Codes Supplement by the District."  D.C. Code § 6–1401(2); *see also* 6–1402.

16.     The International Existing Building Code ("IEBC") is one of the codes that the District has adopted, and it specifically provides that, during construction, "[w]aste materials shall be removed in a manner which prevents injury or damage to persons, *adjoining properties* and public rights-of-way."  IEBC § 1501.4 (2018) (emphasis added).  Moreover, the code specifically emphasizes that this provision, like the others in this chapter, are designed to "govern safety during construction and *the protection of adjacent public and private properties*." *Id.* § 1501.1 (emphasis added).[1]

17.     In the early morning hours of April 13, 2019, a rainstorm passed through Washington.  Steve awoke to the sound of water pouring out of the third-floor ceiling of the 2119 Property and splashing down onto the floors and tables.  Steve rushed downstairs and saw water cascading out of the light fixtures and ceilings on the third and second floors:

---

[1] The 2012 versions of the codes propagated by the International Code Council—which were in effect at the time that D.C. authorized the adoption of these codes—and the 2018 versions of these codes—which are the most current versions of these codes—are available online at https://codes.iccsafe.org/category/I-Codes?page=1.  The regulations quoted above are substantively the same in either version of the IEBC.



18.     In all, the water poured through the ceiling of the third floor and down the walls, through the ceiling of the second floor, through the ceiling of the ground floor, and down the stairs to the ground floor.

19.     Steve and two house guests immediately attempted to protect the floors, furniture, rugs, and other items in the 2119 Property.  They used buckets, pots, and waste baskets to catch the water that was pouring out from the ceilings.  They moved rugs and furniture away from the areas with the biggest leaks.  They mopped and dried the floors—parts of which were original floors from 1908—to prevent warping and other permanent damage.  Although they were able to save the floors, the rest of the house and its contents incurred significant damage.

20.     Later that day, an emergency response team from SERVPRO came to the 2119 Property to assess the damage, cut out portions of the ceilings and walls, and install commercial-grade drying fans.  They installed fans in numerous locations throughout the house.  The fans were noisy.  They ran for 24 hours a day for more than a week in an attempt to dry out the property and prevent mold from growing.  Between the fans and plastic sheets that were needed to isolate and direct the air flow and the water damage to the house, large sections of the house were uninhabitable.  There were no functioning lights in the family room and dining room.

21.     The next day, April 14, 2019, technicians from Magnolia Plumbing came to the
2119 Property and discovered that the drain was clogged by a mixture of dense sand, mortar, and
other debris that Black Hawk and its agents had dumped into the drain:



After several hours and with the assistance of heavy equipment, Magnolia Plumbing was able to
clear the drain.

22.     This clogged drain was the source of the flooding.  During the rainstorm on April
13, water backed up from the drain and entered the house in the closet floor on the fourth floor of
the house.  From there the water poured all the way down to the ground floor through the
ceilings, light fixtures, walls, and stairs.

23.     Over the course of the next several months, Plaintiffs incurred out-of-pocket costs
including, but not limited to, the following items:  (i) emergency roof inspection; (ii)
remediation, asbestos testing, and cleaning by SERVPRO; (iii) repairs performed by a licensed
contractor, including replacement of ceilings, walls, insulation, electrical wiring, light fixtures,
speakers, and painting; (iv) replacement of a sofa and rug; (v) cleaning of rugs; and (vi)
refinishing wood tables.  The out-of-pocket costs incurred to date exceed $90,000.00.

24.     In addition to incurring these out-of-pocket losses, Plaintiffs suffered damages because Black Hawk substantially and unreasonably interfered with their use and enjoyment of the 2119 Property.  Plaintiffs had to live in what amounted to a construction zone.  Their clothing, belongings, and furniture were covered in dust from the demolition and repairs.  They breathed unhealthy air.  They endured the noise from loud fans and the smell of paint and other chemical agents.  They were unable to use and enjoy significant parts of their home for several months, including their family room and dining room.  They took time away from work to deal with the various workers who needed access to the house.

25.     Plaintiffs suffered these damages as a direct and proximate result of the actions taken by Black Hawk and its agents.  The damages also were an immediate and inevitable consequence of the actions taken by Black Hawk and its agents.

26.     On Monday, April 15, 2019, John Spindle, Sr.—the owner and president of Black Hawk—and other agents of Black Hawk visited the 2119 Property.  After being shown the clogged drain and the sand, mortar, and debris, Mr. Spindle admitted that Black Hawk was at fault and reassured Plaintiffs that Black Hawk would assume financial responsibility for the damage it had caused.

27.     Plaintiffs submitted a formal written claim for a liquidated amount of damages, with proof of their out-of-pocket losses, on September 4, 2019.  Black Hawk denied the claim.

## COUNT I – TRESPASS

28.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 27.

29.     Black Hawk committed a trespass by knowingly and intentionally dumping sand, mortar, and other debris into the drain on the 2119 Property and causing water to enter Plaintiffs' home.

30.     These actions were taken without Plaintiffs' permission.  Furthermore, Black Hawk took these actions in direct contravention of the conditions that Plaintiffs had placed on it and its agents' right to enter the 2119 Property.

31.     The flooding of the 2119 Property and the resulting damages were an immediate and inevitable consequence of the intentional actions of Black Hawk and its agents.  As a direct and proximate result of Black Hawk's knowing and intentional actions, Plaintiffs suffered damages as described above in paragraphs 23 and 24.

32.     These damages included, but were not limited to, the physical damage to Plaintiffs' property and belongings, the disruption of Plaintiffs' use and enjoyment of their property, and the mental and emotional distress that accompanied these events.

## COUNT II – NEGLIGENCE

33.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 27.

34.     Black Hawk owed a duty to Plaintiffs to use reasonable care not to cause damage to the 2119 Property in connection with the work it was performing at the condominium building next door.

35.     Black Hawk knew, or with the exercise of reasonable care should have known, that dumping sand, mortar, and other debris into the drain on the 2119 Property would clog the drain and cause flooding and water damage to the 2119 Property.

36.     Black Hawk breached its duty and was negligent when its agents dumped sand, mortar, and other debris into the drain on the 2119 Property.

37.     This breach of duty occurred despite Plaintiffs' clear request that Black Hawk clean up the work site each day and not damage Plaintiffs' property.

38.     As a direct, proximate, and foreseeable result of Black Hawk's negligence, the 2119 Property experienced a flood, and Plaintiffs suffered damages as described above in paragraphs 23 and 24.

39.     These damages included, but were not limited to, the physical damage to Plaintiffs' property and belongings, the disruption of Plaintiffs' enjoyment of their property, and the mental and emotional distress that accompanied these events.

## COUNT III – NEGLIGENCE PER SE

40.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 27.

41.     D.C. law required Black Hawk to remove "[w]aste materials . . . in a manner which prevents injury or damage to persons, *adjoining properties* and public rights-of-way." IEBC § 1501.4 (2018) (emphasis added).  This law established Black Hawk's duty of care, and was intended to protect individuals such as Plaintiffs.  *See* IEBC § 1501.1 (2018).

42.     Black Hawk's dumping of sand, mortar, and other debris into the drain on the 2119 Property violated this law, and thus Black Hawk breached the duty of care that it owed to Plaintiffs.

43.     This breach of duty occurred despite Plaintiffs' clear request that Black Hawk clean up the work site each day and not damage Plaintiffs' property.

44.     As a direct, proximate, and foreseeable result of Black Hawk's negligence, the 2119 Property experienced a flood, and Plaintiffs suffered damages as described above in paragraphs 23 and 24.

45.     These damages included, but were not limited to, the physical damage to Plaintiffs' property and belongings, the disruption of Plaintiffs' enjoyment of their property, and the mental and emotional distress that accompanied these events.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

i.      For compensatory damages of at least $90,000, in an amount to be proven at trial;

ii.     For the reasonable attorneys' fees and costs incurred in this action;

iii.    For pre-judgment interest at the applicable statutory rate in the District of Columbia;

iv.     For post-judgment interest at the applicable statutory rate in the District of Columbia; and

v.      For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Dated:  October 23, 2019                    Respectfully submitted,


                                            _____
                                            Shauna M. Kramer (DC Bar No. 1032222)
                                            W. Connor Winn (DC Bar No. 1617985)

                                            WILLIAMS & CONNOLLY LLP
                                            725 Twelfth Street, NW
                                            Washington, DC  20005
                                            (202) 434-5000
                                            skramer@wc.com
                                            cwinn@wc.com

                                            *Counsel for Plaintiffs*